IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                OPINION AND ORDER

        Plaintiff,

                09-cr-04-bbc

   v.

RONNIE NEWMAN,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Defendant Ronnie Newman has filed objections to the report and recommendation entered by the United States Magistrate Judge on April 3, 2009. The magistrate judge recommended denial of defendant's motion to suppress evidence of the handgun seized during a search of the apartment of defendant's girlfriend, Raven Diaz, and to suppress his post-arrest confession. Defendant contends that the search was illegal, even though it was undertaken only after Diaz agreed to let officers search her apartment, because Diaz's consent was the product of coercion. He contends that his confession must be suppressed because it was the fruit of the illegal search.

      The magistrate judge explained carefully and thoroughly why the search of Diaz's apartment was legal, given her admission to law enforcement that they would find marijuana

1

and paraphernalia in the apartment.  He addressed defendant's other arguments, explaining convincingly why they are not sufficient to require suppression.   I have no disagreement with his explanations or with his recommendation to deny the motion.  However, given the number of objections that defendant has raised to the report, I will add a few comments to the discussion.

## BACKGROUND

Defendant had lived with Raven Diaz in an apartment at 407 Bluff Street in Beloit, Wisconsin for some period of time and may have still been living there on the day that the contested search took place.  Whether or not he spent the nights there, he did spend his days at the apartment, taking care of his and Diaz's infant son.

In the summer of 2008, Beloit police received information from two confidential informants that defendant was selling drugs out of the Bluff Street apartment.  In the early evening of July 3, Sgt. Danny Tilley drove past the apartment and observed a moped in the front yard.  When he learned from police sources that the moped had been reported stolen, he and other officers decided to undertake surveillance of the property.  At about 6 p.m., they saw an African American man walk out of the apartment building; Tilley approached him and asked him to stop, but he fled.  When Tilley returned to the building, Street, he saw a different African American man come out of the building and get on the moped.  Tilley

2

arrested him for using the moped without permission. The man turned out to be defendant. Tilley took him downtown for booking, checked with one of the drug informants who identified a photo of defendant and started drafting a search warrant for the apartment. He directed Officer Halvorsen to continue to watch the premises so as to preserve the integrity of the apartment until it could be searched.

At about 8 p.m., Diaz returned to the apartment from work. She knew that defendant had been arrested because he had called her from the jail to let her know he needed the bill of sale for the moped. Halvorsen approached her and asked her and the co-worker who had driven her home to provide identification. He told them they had arrived at the scene of an investigation involving the apartment building.

Halvorsen told Diaz that the police were in the process of obtaining a search warrant for the apartment and that the situation could be resolved more quickly if she agreed to a search rather than waiting for the warrant to be issued. Diaz did not agree immediately. At some point, she told Halvorsen that she smoked marijuana and that there was a pipe in the apartment. He told her that if she agreed to the search the pipe could be handled with a citation and not a criminal charge. Diaz signed a consent form and the officers searched the apartment.

In the course of the search, the police located a locked safe. Diaz told them she had no key to the safe but that they could force it open. The officers did so and found a Ruger

3

semi-automatic firearm and 9 mm ammunition. When officers told defendant later what they had found, he admitted that the gun and ammunition were his.

Defendant moved to suppress the handgun and to suppress his confession. The magistrate judge held an evidentiary hearing on the motions and issued a report and recommendation. He found that Diaz's statements about her marijuana would have been sufficient to justify a search even if she had not signed the consent form. He was not persuaded by defendant's argument that the police did not know about the marijuana until after Diaz had signed the form. He noted that at the hearing; Diaz had testified repeatedly that it was her concern over the presence of the marijuana that made her reluctant to consent to a search and she never denied that she told the officers they would find evidence of marijuana use in the apartment.

The magistrate judge discussed defendant's arguments that the police had overborne Diaz's will by making a baseless threat to obtain a warrant, making a baseless threat to arrest her if they had to get a warrant and then found contraband in her apartment and generally wearing down her resistance by relentless hectoring her. He found that none of these arguments had merit. It was not a baseless threat for the police to say they would obtain a warrant; that is what Tilley was doing while Halvorsen was speaking to Diaz and Tilley had sufficient evidence to have succeeded on his application. It was not a baseless threat for the officers to tell Diaz that they would arrest her if they found contraband in her apartment

4

once they had obtained a warrant.  This was a realistic course of action for the police.  Third, the evidence showed that Diaz's resistance was not worn down in the ten minutes that the police talked with her on the steps of the apartment building.

## OPINION

Defendant's first objection is that the testimony does not support the magistrate judge's finding that Diaz told the police about her marijuana before she agreed to a search.  He is wrong.

Having read the transcript of the evidentiary hearing, I conclude that the testimony supports the magistrate judge's finding and the government's contention that Diaz gave this information to the police and that she did so before she consented to a search of the apartment.  No other conclusion can be drawn from her testimony, in which she said that Halvorsen talked to her about getting a search warrant if she chose not to consent and told her that if she did not consent and the police ended up finding drugs or paraphernalia in the apartment, she could be charged with possession of whatever they found.  Trans., dkt. #20, at 44-45.  He added that this could mean that she would be charged and convicted and unable to stay with her infant son, whereas if she did consent she would get only a ticket for the marijuana pipe.  Id. at 42-44.  She never denied having told Halvorsen about the marijuana before she signed the consent form.

Defendant contends, however, that Diaz's admission was not voluntary under the circumstances. Diaz testified that Halvorsen talked to her about getting a search warrant if she chose not to consent and told her that if she did not consent and the police ended up finding drugs or paraphernalia in the apartment, she could be charged with possession of whatever they found. Id. at 43-45, 57. She said that he told her she could be charged and convicted and unable to stay with her infant son, whereas if she did consent she would get only a ticket for the marijuana pipe. Id. 43-44, 46. She testified that Halvorsen asked her three times for permission to search and she agreed to sign because she felt coerced. But she added this telling explanation of "coerced": "not in the sense in the way you better sign the form, but in the sense of the way I have no choice but to sign the form." Id. at 47. She also testified that she was shaking, crying, sweating and feeling pressured while Halvorsen was speaking to her. Id. at 45-46.

Diaz had reasons to feel pressured and upset: she was in a difficult situation. She knew that she had the marijuana pipe in the apartment and she did not know what defendant might have cached there during the days while he was babysitting. She may have hoped he was out of the drug dealing business but she couldn't be sure of it. After all, he was in the apartment when she was not and he had distributed drugs in the past. Halvorsen's reminders of what could happen to her and her small child if she were arrested and convicted of a drug crime would have confirmed what she already knew. It would not be surprising

6

that they contributed to any stress she felt.

Nevertheless, the record does not support a claim of illegal coercion to admit to drug possession. The record shows a young woman in a tight spot, wanting to protect her boyfriend but wanting even more to protect herself and her child from the consequences of an arrest on drug charges. Faced with a decision between temporarily delaying a search of her apartment that she knew would disclose at least the marijuana pipe and agreeing to a search with the promise that she would not be charged with possession of the pipe or any other paraphernalia, she made a rational choice based on accurate, if unpalatable information.

Finally, defendant argues that a careful look at the totality of the circumstances shows that neither Diaz's consent nor her admission of drug possession was voluntary. Taking everything into consideration, I cannot reach the same conclusion. Therefore, I will adopt the magistrate judge's report and recommendation.

ORDER

IT IS ORDERED that the report and recommendation entered by the United states Magistrate Judge on April 3, 2009, is ADOPTED; defendant Ronnie Newman's motion to suppress the physical evidence seized during a search of Apartment 3, 407 Bluff Street, Beloit, Wisconsin, is DENIED, as is his motion to suppress his confession as the fruit of an

7

illegal search.

      Entered this 27th day of May, 2009.

                              BY THE COURT:

                              /s/

                              _____
                              BARBARA B. CRABB
                              District Judge